IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| Ms. Jackie Skroupa, Administrator<br>of the Estate of Collin Anthony<br>Randza, and on her own behalf, and<br>M.R., a minor, by and<br>through her parent and natural<br>guardian, Ms. Jackie Skroupa | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action |
| **Plaintiffs,** | ) <br> ) <br> **)** | No.  2:23-cv-2008 |
| v. | ) <br> ) | **Jury Trial Demanded** |
| Shaler Area School District,<br>and the Pennsylvania Department of<br>Education | ) <br> ) <br> ) <br> ) | |
| **Defendants.** | ) <br> ) <br> ) | |

## **COMPLAINT**

AND NOW comes the Plaintiffs, Ms. Jackie Skroupa, Administrator of the Estate of Collin

Anthony Randza, and on her own behalf, and M.R., a minor, by and through her mother, Ms. Jackie

Skroupa, by and through their counsel, Jeffrey J. Ruder, Esquire, Kristen C. Weidus, Esquire, and Ruder

Law, LLC, alleging the following:

### **Preliminary Statement**

1. This is a civil rights action brought by M.R., a minor, Ms. Jackie Skroupa in her own right, and
   on behalf of the Estate of Collin Anthony Randza, against the Shaler School District ("District")
   and the Pennsylvania Department of Education ("PDE").

2. Ms. Skroupa alleges that the Shaler Area School District ("the District") illegally discriminated
   against Collin with deliberate indifference and denied him a free and appropriate public
   education by failing to identify him as a protected handicapped student and by failing to provide

him with appropriate disability-based accommodations, despite knowing that he had been diagnosed with Obsessive Compulsive Disorder.

3.  Ms. Skroupa further alleges that these actions were in violation of the Child Find Requirements of Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and the Individuals with Disabilities Education Act, such that Collin was deprived of a free and appropriate public education.

4.  Plaintiffs assert that the District maintains a policy and practice of failing to identify students who require mental health services, and further alleges that the District failed to properly train and supervise its personnel in identifying and supporting students requiring these services.

5.  Ms. Skroupa alleges that the District committed these and other enumerated acts, which violated her substantive due process rights guaranteed to her under the Fourteenth Amendment, including Parent's liberty interests associated with the parent-child relationship, as well as Collin's right to life and his liberty interest in bodily integrity. These actions are brought pursuant to 42 U.S.C. § 1983, which prohibits the deprivation of Constitutional rights by government officials acting under color of law.

6.   Ms. Skroupa also alleges that the District's actions deprived her son of his right to life.

7.  Plaintiffs further allege that the District failed to provide supports to M.R. after Collin's death, violating her rights under Section 504 of the Rehabilitation Act.

8.  Plaintiffs seek declaratory and injunctive relief, as well as compensatory damages, to remedy the Defendants' discriminatory and unlawful acts.

9.  Moreover, Plaintiffs seek injunctive relief to change the District's unlawful practices and to ensure its employees are able to identify and provide services to students with mental health conditions.

10. In addition, Ms. Skroupa further alleges that the Pennsylvania Department of Education ("PDE") violated Section 504 of the Rehabilitation Act of 1973 and the Individuals with Disabilities Education Act ("IDEA") by failing to provide procedures sufficient to ensure that the District complied with its Child Find requirements.

11. Ms. Skroupa also alleges that PDE discriminated against Collin through the District's failure to appropriately evaluate and identify him as a protected handicapped student which excluded him from participation in, denied him the benefits of, and subjected him to discrimination at, the school.

**Parties**

12. Collin Randza was born on October 25, 2008. At all times relevant, Collin resided in and attended Shaler Area School District.

13. Plaintiff, M.R., is a seventeen year old student who has been determined by Defendant to be eligible for accommodations under Section 504 of the Rehabilitation Act as an individual with Major Depressive Disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, and Posttraumatic Stress Disorder. At all times relevant, M.R. has resided in and attended Shaler Area School District.

14. Plaintiff, Ms. Jackie Skroupa, is the mother of Collin and served as his guardian. She is also M.R.'s mother, and the Administrator of Collin's estate. At all times relevant, she resided in the Shaler Area School District.

15. Defendant, Shaler Area School District, is an educational institution with multiple locations, including a Central Administration Office located at 1800 Mt. Royal Boulevard, Glenshaw, PA 15116. The District was Collin's Local Education Agency ("LEA") within the meaning of the

IDEA and is a recipient of federal funds, and is therefore legally bound by the provisions of Section 504, the ADA, and Section 1983.

16. At all times material and relevant hereto, the District acted by and through its agents, employees, servants, and officers.

17. Defendant, the Pennsylvania Department of Education ("PDE"), is a governmental agency and a state educational agency as defined by the IDEA. PDE is a proper defendant for a systemic IDEA and Section 504 claim because of its responsibility to ensure that each child within its jurisdiction is provided a FAPE, and PDE may be held responsible if it fails to comply with its duty. *Kruelle v. New Castle Cnty. Sch. Dist.,* 642 F.2d 687, 697 (3d Cir. 1981).

## Jurisdiction and Standing

18. This Complaint seeks appropriate relief for violations and denial of equal access to education pursuant to the IDEA, Section 504, the ADA, Section 1983, and the Fourteenth Amendment.

19. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. In particular, this action asserts federal questions under 42 U.S.C. §1983, 29 U.S.C.§794 ("Section 504"), Title II of 42 U.S.C. §12132 et seq. ("ADA"), and 20 U.S.C. §1400, et seq. ("IDEA")

20. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§2201 and 2202, 42 U.S.C. §1983 and Rule 57 of the Federal Rules of Civil Procedure.

21. All Defendants' actions complained of herein took place within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and Defendants are present and conduct affairs in this judicial district.

22. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391.

## Factual Allegations

23. This action is brought on behalf of the Estate of Collin Randza, who took his own life on January 6, 2022.

24. Collin was a 13-year-old boy with friends and a loving family, including an older sister.

25. This action is also brought on behalf of M.R., Collin's older sister.

26. Collin was diagnosed with Obsessive Compulsive Disorder ("OCD") in 2018, and began receiving outside mental health and counseling services in 2020.

27. Ms. Skroupa informed the District that Collin was receiving OCD treatment outside of school.

28. Despite clear knowledge of Collin's struggles at school, the District failed to initiate an evaluation of Collin or otherwise offer him appropriate supports to address his needs within the school setting.

29. In an effort to support Collin despite the District's failure, Ms. Skroupa went so far as to request a space in the school where he could go to participate in virtual counseling each day.

30. However, the District refused this request, forcing Collin to access his outside therapy appointments from his mother's car in the District's parking lot.

31. Despite knowledge of Collin's increasing struggles, the District failed to initiate an evaluation to determine if he qualified for additional special education supports.

32. On January 6, 2022, Collin took his own life.

33. When his sister, M.R., was getting ready for school that morning, she found her brother hanging lifeless.

34. M.R. is a twelfth-grade student in the District. Throughout her time in the District, M.R. experienced academic success as a result of her strong efforts. That continued into her tenth grade year in August 2021.

35. Following the tragedy of losing her brother, the District took no steps to provide counseling to Collin's classmates or to his sister.

36. Although M.R. had a history of anxiety and depression prior to her brother's death, her symptoms understandably increased significantly in January 2022.

37. In an effort to support her, M.R.'s parents immediately identified an appropriate outpatient mental health provider, Ms. Jacqueline Reynolds, and she began counseling sessions with M.R. in January 2022.

38. M.R. returned to school about two weeks after her brother's death. Upon her return to school, not a single person from the District reached out to her to provide support or to check in to see how she was doing.

39. In fact, nothing occurred at all until the elementary school counselor came to the middle school four weeks later. This was only after it became apparent that Collin's friends and family were not receiving the support they needed from the middle school counselor.

40. M.R.'s struggles were apparent, though, and by the conclusion of the school year she had missed an uncharacteristic twenty days of school, arriving late an additional fourteen times.

41. Although she continued to work hard, her grades also dropped.

42. On May 18, 2022, the Shaler Area School District shared a post on its Facebook page for Mental Health Awareness Month. The post stated that there was a school beautification project that had started in January 2022, with around 120 students and staff taking a break from exams to paint blank canvases. The canvases were then screen printed with positive messages of belonging, mental health awareness, and suicide prevention. The goal of this project was to spread positivity and hope, as well as to reduce the stigma surrounding mental health.

43. Ms. Skroupa was extremely disappointed that the District failed to mention Collin in connection with this project, or Mental Health Awareness Month.

44. On June 1, 2022, M.R.'s Honor's English teacher, Mr. Schott, asked the class for honest feedback on his course. In her response, M.R. wrote the following:

> "You were fine at first. It was a normal honors class. But when I found my brother, my best friend dead you weren't much of a help. Yeah, at first you tried to help but then just stopped. Everything we did was about suicide and you completely stopped warning me. It's been not even 5 months since I found my 13 year old brother. The school and teachers are suppose to make you feel safe and cared for. I didn't and I don't. You have one person in each of your classes who knew and loved Collin and yet you decided not to change the curriculum at all. I stopped turning in assignments and trying because who knew when the next suicide situation would occur. I sat in the back of your classroom crying and you saw me, I know you did, but you did nothing. Let me sit there in silence and cry.  I'm so glad this year is over. Please become more considerate and think about others. You don't know my home life and you don't know others home life. If I didn't have the family I have I would have been screwed. The school and almost all of the teachers including you gave no help. A child should not be afraid to go to English class because she will have to hold back tears."

45. Even after M.R. was brave enough to share her personal trauma and to ask for help, the District failed to initiate an evaluation to determine her eligibility for special education services. Further, no Section 504 Plan was developed or implemented.

46. On June 2, 2022, the Middle School Principal, Dr. Shannon Howard, called Ms. Skroupa to inform her that when students' names were being called to pick up yearbooks, a school employee inadvertently called Collin's name over the PA system twice.

47. That same day, M.R. was called to the guidance office, where she was met by two counselors who wanted to discuss the letter that she wrote to Mr. Schott. Rather than offering support though, these counselors asserted that they could not have known that she needed help,

effectively blaming M.R. for not reaching out to the administration. This was the first time since her brother's death that M.R. had been contacted by the guidance office.

48.  A week later, on June 15, 2022, Ms. Skroupa received an email regarding a grief group specifically for Collin's friends. It was an email from Ms. Wendi Randall, the mother of Collin's best friend. She was contacting parents to set up a support group for the children who were grieving the loss of their friend, as the District had failed to do so.

49.  Ms. Skroupa maintains that, despite knowledge that its policies and procedures were deficient, the District failed to make changes or train staff after Collin's death. As a result, the District continues to fail its students.

50.  When the 2022-2023 school year began, M.R. was really struggling. On August 31, 2022, roughly six days after the school year began, Ms. Skroupa received a phone call from Ms. LeeAnn Guido, the High School's social worker.

51.  For the first time, eight months after her brother's death, Ms. Guido expressed that she was eager to help M.R., and provided Ms. Skroupa with information regarding Shaler's Area Academy. Upon information and belief, this is a program for students who are at-risk of becoming non-graduates, including students with special needs.

52.  Ms. Guido explained that she felt the program would be appropriate for M.R. given the tragedy that she had experienced.

53.  Even after making this suggestion, though, the District took no steps to initiate an evaluation or to implement a Section 504 Plan.

54.  Ultimately, her family determined that M.R. would first try to attend school in person for two periods, and then would return home to complete her other work virtually.

55. At the end of the first marking period, though, M.R. continued to struggle. At that time, her family elected to switch to the Academy program. As a result, M.R. was enrolled in Math, Science, and Social Studies through the Academy's online platform.

56. In November 2022, M.R. participated in a psychiatric evaluation at Services for Teens at Risk (STAR), an outpatient program associated with UPMC Western Behavioral Health. Based on the evaluation and subsequent appointments, M.R. was diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, and Posttraumatic Stress Disorder.

57. On November 29, 2022, the STAR program provided the family with a letter to share with the District. This correspondence outlined M.R.'s mental health diagnoses, also specifically explained that STAR "would like to support [M.R.] in obtaining a 504 plan." A contact number was provided for the District, also.

58. Inexplicably, the District ignored the STAR program's suggestion, failing to initiate an evaluation or develop a Section 504 Plan for M.R. at that time.

59. The family, though, was unaware that the District had not moved forward with the development of a 504 Plan. It was not until late January 2023, when counsel requested records for M.R., that the family discovered that no 504 Plan had been prepared.

60. Rather than quickly working to resolve the situation, though, the District's first response was to attempt to shift the blame to the family, suggesting that attempts to secure authorization to proceed with the development of such a plan were ignored.

61. It was not until early February 2023 that the District issued a Permission to Evaluate. Despite the family's request that a 504 Plan be immediately developed and implemented while the evaluation was conducted, the District ignored this request.

62. Instead, the District continually requested meetings, which the family understandably was not interested in attending. They were unwilling to further delay. Instead, they provided a detailed list of accommodations to the District via counsel, asking again that a 504 Plan be implemented immediately.

63. Despite this, though, a draft 504 Plan was not provided until March 22, 2023—the same date that the Evaluation Report draft was shared.

64. As of March 8, 2023, M.R. continued to struggle with attendance, having missed forty-one of one hundred and twenty-two school days, even with her modified schedule and shortened school day.

The District's failure to appropriately respond to M.R.'s well-documented needs and subsequent mental health diagnoses provides further evidence of its systemic failure to evaluate, identify, and program for students requiring emotional and mental health support.

**COUNT I: The District's Violation of 504 of the Federal Rehabilitation Act of 1973**

**COUNT II: The District's Violation of Title II of the Americans with Disabilities Act**

*Ms. Skroupa, as Administrator of the Estate of Collin Randza vs. Shaler Area School District*

65. The averments set forth in the preceding paragraphs are incorporated by reference here as though fully set forth at length.

66. Section 504 prohibits disability discrimination by recipients of federal funds. The statute provides that:

> No otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[…]. 29 U.S.C. §794(a) (West).

67. Section 202 of the ADA similarly states:

> "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132 (West).

68. The same standards govern both Section 504 and ADA claims. *S.H. ex rel. Durrell v. Lower Merion School District,* 729 F.3d 248, 260 (3d Cir. 2013). Thus, Counts I and II will be considered together here.

69. Claims for compensatory damages under Section 504 and the ADA require a finding of intentional discrimination. *Id.* at 262.

70. "Deliberate indifference" may satisfy a claim for compensatory damages under Section 504 and the ADA. *Id.*

71. Deliberate indifference requires both (1) knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that likelihood." *Id.* at 261 (quoting *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

72. The deliberate indifference standard "does not require a showing of personal ill will or animosity toward the disabled person." *S.H.,* 729 F.3d at 263 (citing *Meagley v. City of Little Rock,* 639 F.3d 384, 389 (8th Cir. 2011)) (quoting *Barber v. Colo. Dep't of Revenue,* 562 f.3d 1222, 1228-29 (10th Cir. 2009)).

73. An individual with a disability is defined under Section 504 and the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities.

74. The District discriminated against Collin as a direct result of his disability. More specifically, the District knew or should have known of his OCD diagnosis but failed to take the required steps to address it.

75. Collin was in an intensive outpatient treatment center three different times to treat his OCD. This treatment put the District on notice of Collin's disability, and triggered the District's Child Find obligation. However, the District failed to initiate an evaluation, nor did it take any steps to support Collin following his treatment.

76. The District clearly had knowledge that a harm to a federally protected right was substantially likely, and yet failed to act upon that likelihood.

77. Plaintiff further alleges that the District discriminated against Collin in violation of Section 504 when it failed to provide him with the space to attend therapy, despite having actual knowledge that he required this support.

78. Despite possessing actual knowledge of Collin's disabilities and related needs, the District failed to provide him with the accommodations required to provide him equal access to his education.

79. Moreover, the District maintains a policy and practice of ignoring students' mental health needs, and fails to properly train and supervise its personnel in handling and supporting students who require this support.

80. As such, the District acted with deliberate indifference toward Collin in violation of Section 504 and the ADA.

**WHEREFORE**, Ms. Skroupa respectfully requests that this Honorable Court award Plaintiffs all appropriate remedies available under Section 504 and the ADA for the above-outlined violations.

**COUNT III: The District's Violation of 504 of the Federal Rehabilitation Act of 1973**

**COUNT IV: The District's Violation of Title II of the Americans with Disabilities Act**

*M.R. v. Shaler Area School District*

81. The averments set forth in the preceding paragraphs are incorporated by reference here as though fully set forth at length.

12

82. Section 504 prohibits disability discrimination by recipients of federal funds. The statute

    provides that:

> No otherwise qualified individual with a disability in the United
> States… shall, solely by reason of her or his disability, be excluded
> from the participation in, be denied the benefits of, or be subjected
> to discrimination under any program or activity receiving Federal
> financial assistance or under any program or activity conducted by
> any Executive agency[….]. 29 U.S.C. §794(a) (West).

83. Section 202 of the ADA similarly states:

> "[N]o qualified individual with a disability shall, by reason of such
> disability, be excluded from participation in or be denied the benefits
> of the services, programs, or activities of a public entity, or be
> subjected to discrimination by any such entity." 42 U.S.C. §12132
> (West).

84. The same standards govern both Section 504 and ADA claims. *S.H. ex rel. Durrell v. Lower

    Merion School District,* 729 F.3d 248, 260 (3d Cir. 2013). Thus, Counts III and IV will be

    considered together here.

85. Claims for compensatory damages under Section 504 and the ADA require a finding of

    intentional discrimination. *Id.* at 262.

86. "Deliberate indifference" may satisfy a claim for compensatory damages under Section 504 and

    the ADA. *Id.*

87. Deliberate indifference requires both (1) knowledge that a harm to a federally protected right is

    substantially likely," and (2) "a failure to act upon that likelihood." *Id.* at 261 (quoting *Duvall v.

    Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

88. The deliberate indifference standard "does not require a showing of personal ill will or animosity

    toward the disabled person." *S.H.,* 729 F.3d at 263 (citing *Meagley v. City of Little Rock,* 639

    F.3d 384, 389 (8th Cir. 2011)) (quoting *Barber v. Colo. Dep't of Revenue,* 562 f.3d 1222, 1228-

    29 (10th Cir. 2009)).

89. An individual with a disability is defined under Section 504 and the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities.

90. The District discriminated against M.R. as a direct result of her disability. More specifically, the District knew not only that M.R.'s mental health struggles were impacting her ability to access her educational programming, but also received explicit confirmation of new mental health diagnoses after she participated in an outpatient mental health treatment program.

91. Despite this, the District failed to initiate an evaluation, and ignored a direct recommendation from the STAR program that a Section 504 Plan be developed for M.R.

92. The District clearly had knowledge that a harm to a federally protected right was substantially likely, and yet failed to act upon that likelihood.

93. Despite possessing actual knowledge of M.R.'s disabilities and related needs, the District failed to timely provide her with the accommodations required to provide her equal access to her education.

94. Moreover, the District maintains a policy and practice of ignoring students' mental health needs, and fails to properly train and supervise its personnel in handling and supporting students who require this support.

95. As such, the District acted with deliberate indifference toward M.R. in violation of Section 504 and the ADA.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all appropriate remedies available under Section 504 and the ADA for the above-outlined violations.

### COUNT V: The District's Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act: Associational Discrimination

#### *Ms. Skroupa vs. Shaler Area School District*

96. The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

14

97.  A plaintiff asserting an associational discrimination claim under Section 504 and Title II of the

ADA must plausibly allege:

> a logical and significant association with an individual with disabilities;
> (2) that a public entity knew of the association; and (3) that the public
> entity discriminated against them because of that association; and
> (4) they suffered a direct injury as a result of the discrimination.
> *Schneider v. Cnty. of Will, State of Illinois,* 190 F. Supp. 2d 1082,
> 1088 (N.D. Ill. 2022) (*citing* 28 C.F.R. §35.130 (g)).

98.  The first two elements of an associational claim are easily met in the present matter. Ms. Skroupa

is Collin's mother. Collin was a student with a disability. Furthermore, the District knew of this

association.

99.  The District discriminated against Ms. Skroupa because of her association with Collin by failing

to provide him with sufficient support.

100.  The District ignored Ms. Skroupa's concerns, which directly resulted in Collin being denied

appropriate supports, as well as access to his education. This also prevented Ms. Skroupa from

effectively advocating for Collin as a member of either an IEP or Section 504 Plan team.

101.  As a result of the anxiety and stress she experienced because of the incidents described in this

Complaint, Ms. Skroupa's mental health and physical health declined. Ms. Skroupa suffered a

direct injury as a result of the discrimination.

102.  Therefore, Ms. Skroupa has suffered discrimination on the basis of her association with Collin, a

child with a disability, due to the District's actions.

**WHEREFORE**, Ms. Skroupa respectfully requests that this Court award her all remedies available

under Section 504 and the ADA for these violations, including monetary damages, attorneys' fees and

costs, and all other relief this Honorable Court deems appropriate.

## COUNT VI: The District's Violation of Fourteenth Amendment Liberty Interest

### *Denial of Collin's Right to Life and his Right to Liberty Interest in Bodily Integrity, and for the Denial of Parent's Liberty Interests in the Care of her Child*

103.   The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

104.   The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

105.   To state a Due Process claim under Section 1983, a plaintiff "'must identify a "recognized 'liberty or property interest' within the purview of the Fourteenth Amendment and [show] that [they were] intentionally or recklessly deprived of that interest, even temporarily, under state law.'" *Anspach ex rel. Ansach v. Cty. of Philadelphia, Dept. of Pub. Health,* 503 F.3d 256, 261 (3d Cir. 2007) (quoting *Griffith v. Johnston,* 899 F.2d 1427, 1435 (5th  Cir. 1990)).

106.   Additionally, "the interest of parents in the care, custody, and control of their children are perhaps the oldest fundamental liberty interests recognized by this Court." *Troxel v. Granville,* 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

107.   Ms. Skroupa possessed a liberty interest, guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in the parenthood and companionship of her child, and the maintenance and integrity of her family.

108.   Plaintiff alleges that the District's wrongful actions against Collin and his family were done under the color of state law with deliberate indifference, and deprived them of the rights, privileges, and immunities guaranteed to them under the Fourteenth Amendment of the United States Constitution.

109.   Specifically, Plaintiff alleges that Defendant violated her right to life and liberty under the law when it callously disregarded Collin's emotional needs and fragility.

110. Further, Ms. Skroupa alleges that the District violated her right to life and liberty under the law by ignoring Collin's need for therapy throughout the day and refusing to provide him the support, or at minimum the space needed to permit him to access his outside provider's service.

111. As a result of Defendant's callous disregard, culminating in a final failure to protect Collin from the emotional abuse he suffered at school and failing to provide him with the support he needed, he took his own life on January 6, 2022.

112. These actions deprived Collin of his liberty interest in bodily integrity.

113. The District's actions also deprived Ms. Skroupa of her liberty interest in the care of her child.

114. Ms. Skroupa further alleges that the failure to educate, train, and supervise its employees in the rights of students to be free from discrimination amounted to an official policy, practice, and custom and caused a deprivation of Collin's and his family's Fourteenth Amendment right to life and liberty, respectively.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all remedies available under Section 1983 for these violations including monetary damages, attorneys' fees and costs, and all other relief that this Honorable Court deems appropriate.

## COUNT VII: Failure to Train

### *All Plaintiffs v. Shaler Area School District*

115. The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

116. Although a school district many not be sued for an injury inflicted solely by its employees or agents under Section 1983:

> …it is when execution of a government's policy or custom, whether made by its lawmaker or by one whose edits or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1938.

*Enright v. Springfield Sch. Dist.*, 2017 WL 4570970, at *5 (E.D. Pa. 2007) (citing *Monell v. Dept. of Social Services of the Cty. of N.Y.*, 436 U.S. 658, 694 (1978)).

117.   More specifically, "inadequacy of training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the municipal employees at issue come into contact." *Enright* at *5 (See *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

118.   Finally, "a claim for inadequate training will succeed if a plaintiff 'can establish that the identified deficiency in defendant's training program is closely related to the injury' suffered by the plaintiff." *Page v. Sch. Dist. of Phila.*, 45 F. Supp. 2d 457, 467 (E.D. Pa. 1999) (quoting *Whichard v. Cheltenham Twp.*, 1996 WL 502281, at *5 (E.D. Pa. 1996)).

119.   The District is liable for the wrongful conduct of its employees and agents, as the decision makers failed to create and implement a policy and practice of properly identifying students with mental health needs.

120.   The District is liable for the wrongful conduct of its employees and agents, as the decision makers failed to train and supervise its agents and employees charged with the care and custody of students with mental health needs requiring special education supports.

121.   The District's failure to adequately train amounts to deliberate indifference to the rights of vulnerable students like Collin.

122.   Because of the District's wrongful conduct, Collin and his family suffered as outlined in this Complaint.

   **WHEREFORE,** Plaintiffs respectfully request that this Honorable Court find that the District failed to train its staff and agents as required, and thus grant relief as is appropriate and necessary.

## COUNT VIII: PDE's Violation of Section 504 and the IDEA

### *All Plaintiffs v. PDE*

123. The preceding paragraphs are incorporated herein by reference as if fully set forth here at length.

124. Under the IDEA and Section 504, PDE is the State Education Agency ultimately responsible for the implementation of both statutes by Local Education Agencies ("LEAs") such as Shaler Area School District.

125. Plaintiffs assert that PDE failed in its obligation to ensure non-discrimination against protected handicapped students under Section 504 and the IDEA by failing to provide sufficient regulations, guidance, supervision, investigation, training, and enforcement, thereby permitting the District's unlawful practices regarding the identification of students with mental health conditions to continue.

126. Under the IDEA, any state receiving federal funds is entrusted with "general supervisory responsibilities" and must have policies and procedures to ensure, among other things, that it provides a free appropriate public education to all children with disabilities in a state. 20 U.S.C. §1412(A).

127. The state also has the power to allocate IDEA funds towards supporting and directing personnel development and training, assisting local education agencies in meeting personnel shortages, and making sub-grants to local educational agencies to help them provide direct services and "in making systemic change to improve results for children with disabilities." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 2004 WL 633222, at *21-22 (E.D. N.Y. 2004) citing 20 U.S.C. §1411(f)(3), (f)(4)(A).

128. Given the broad statutory supervisory responsibilities accorded to state educational agencies, in cases such as this where Plaintiffs have alleged systemic violations of IDEA and Section 504,

courts have found that the state is a proper party to the action. *Lawrence Tp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 327 (3d Cir. 2005); *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80 (3d Cir. 1996); *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 2016 WL 5661775 (E.D. Cal. 2016).

129.   Upon information and belief, the District's failures to appropriately identify and program for students with emotional and mental health needs are directly related to PDE's failures to supervise, guide, investigate, train, and enforce Section 504 and the IDEA.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue a declaration finding PDE in violation of Section 504 and the IDEA. Plaintiffs further request injunctive relief requiring the revision of PDE's supervisory practices regarding the identification and protection of handicapped students by Local Education Agencies ("LEAs").

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Honorable Court enter an Order:

1.   Assuming jurisdiction of this case;

2.   Awarding attorneys' fees and costs under the IDEA, the ADA, and Section 504;

3.   Awarding Plaintiffs all remedies available under the United States Constitution and Section 1983 for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate;

4.   Declaring that the District violated Section 504 of the Rehabilitation Act, and that it did so with deliberate indifference;

5.   Declaring that the District discriminated against Collin on the basis of his disability in violation of Title II of the Americans with Disabilities Act;

6.   Declaring that the District discriminated against M.R. on the basis of her disability in violation of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act;

7. Declaring that the District's policies and procedures violate Section 504 of the Rehabilitation Act, Title II of the ADA, and the IDEA;

8. Declaring that Defendant violated the rights of Plaintiffs to life and liberty under the Fourteenth Amendment of the United States Constitution, by way of Section 1983;

9. Enjoining Defendant from future implementation of its unlawful practice and policy;

10. Declaring that PDE violated Section 504 and the IDEA;

11. Issuing injunctive relief requiring PDE to revise its supervisory practices regarding the identification and protection of handicapped students by Local Education Agencies; and

12. Granting such other and further relief as may be appropriate.

Respectfully Submitted:

RUDER LAW, LLC

/s/ *Jeffrey Ruder*
Jeffrey J. Ruder, Esq.
PA Attorney ID 79270
One Oxford Center
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Telephone: (412) 281-4959
Email: jeffruder@ruderlaw.com

/s/ *Kristen Weidus*
Kristen C. Weidus, Esq.
PA Attorney ID 313486
One Oxford Center
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Telephone: (412) 281-4959
Email: kristenweidus@ruderlaw.com